Thiago M. Coelho, SBN 324715
*thiago.coelho@wilshirelawfirm.com*
Chumahan B. Bowen, SBN 268136
*chumahan.bowen@wilshirelawfirm.com*
Jesenia A. Martinez, SBN 316969
*jesenia.martinez@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN RYAN BEST, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>1LIFE HEALTHCARE, INC. dba ONE MEDICAL, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No. 3:26-06145<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Plaintiff Jonathan Ryan Best ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant 1Life Healthcare, Inc. dba One Medical ("One Medical" or "Defendant") and Does 1 through 10, inclusive (collectively, "Defendants"); based upon information and belief and their own personal knowledge, and based upon, *inter alia*, the investigations of their attorneys.

## NATURE OF THE ACTION

1. One Medical operates a nationwide healthcare enterprise that includes both its general primary-care business and a senior-focused healthcare business formerly known as Iora Health. One Medical acquired Iora Health in 2021, and the acquired business now operates under the names One Medical Senior Health and One Medical Seniors.

2. In connection with the acquisition and continued operation of the former Iora Health business, One Medical retained substantial amounts of historical patient information. As a requirement to provide services, One Medical requires that its patients provide it with their Personal Identifying Information (PII) and Protected Health Information (PHI) (collectively, "Private Information"). As a result, One Medical collects, aggregates and stores the Private Information of its patients in the regular course of business. One Medical has acknowledged that at least some of this information was maintained as archived data on a third-party file-storage platform used for One Medical Seniors and legacy Iora Health records.

3. The Private Information that One Medical collects from its patients is subject to a framework of federal and state statutes in the United States. These regulations are designed to protect the privacy and security of sensitive information, particularly within healthcare and related industries.

4. The information stored on the third-party platform included patient records originating from One Medical Seniors and designated former Iora Health clinics. Although One Medical has described the information as "archived," the records remained accessible through an active file-storage environment and had not been deleted, destroyed, anonymized, or otherwise rendered inaccessible to unauthorized persons.

5. Between approximately June 8 and June 11, 2026, an unauthorized person obtained access to patient files maintained on the third-party file-storage system (the "Data Breach"). One Medical has publicly acknowledged that the unauthorized person was able to access files stored within that system during this period.

6. One Medical did not discover or learn of the unauthorized access until June 13, 2026, approximately 2 days after the period of access identified in its public notice ended.

7. On June 17, 2026, One Medical publicly announced what it characterized as a "security event" involving One Medical Senior Health, formerly known as Iora Health. Notwithstanding that characterization, One Medical affirmatively acknowledged that an unauthorized person gained access to a data repository containing patient information and accessed patient files maintained within that repository.

8. One Medical stated that its investigation had identified files containing both demographic information and clinical records. Thus, the incident did not involve only technical information, publicly available information, or internal business records; it involved information associated with identifiable patients and their receipt of healthcare services.

9. One Medical stated that its review had identified affected files associated with designated One Medical Seniors and former Iora Health clinics in Atlanta, Cape Cod, Charlotte, Piedmont Triad, Denver, Houston, Phoenix, Tucson, and Seattle. The Data Breach therefore involved records associated with healthcare operations across multiple geographic markets and numerous states.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

10. Shortly after One Medical announced the incident, the cybercriminal extortion group known as ShinyHunters publicly claimed that it had stolen data from One Medical. Contemporaneous reporting states that the group posted its claim on a dark-web leak site and identified One Medical generally as the target of its intrusion.




11. ShinyHunters claimed that it had obtained approximately 8.8 terabytes of data from One Medical. The hackers' reported announcement referred broadly to data allegedly taken from One Medical.

12. One Medical's public disclosure also does not explain why archived clinical records remained accessible through a third-party platform years after One Medical acquired Iora Health, what retention policy governed those records, or whether the continuing retention of the information was reviewed as part of One Medical's integration of Iora Health's systems.

13. The Data Breach involved data inherited or retained following a corporate acquisition and stored outside One Medical's primary electronic medical record system. One Medical's statements therefore confirm that sensitive patient information may remain exposed to cybersecurity risks even when maintained in systems characterized as archival or separate from active clinical platforms.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

14. One Medical has expressly acknowledged that the affected files contained demographic and clinical records associated with identifiable patients.

15. One Medical's post-incident response establishes that the company considered the unauthorized access sufficiently serious to deactivate or secure the affected platform, revoke user access, rotate employee credentials, launch an investigation, implement additional safeguards, establish a dedicated call center, and initiate direct patient notifications.

16. Under statute and regulation, One Medical had a duty to implement reasonable, adequate industry-standard data security policies safeguards to protect patient Private Information from unauthorized disclosure.

17. Plaintiff, individually and on behalf of those similarly situated persons (hereafter "Class Members"), brings this class action to secure redress against Defendants for the reckless and negligent violation of the privacy rights of Plaintiff and Class Members. Plaintiff and Class Members are current or former patients of Defendant who had their Private Information collected, stored, and ultimately breached by Defendants. Plaintiff and Class Members reasonably expected that Defendants would adhere to statute and regulation and maintain reasonable security to protect their Private Information. Had Plaintiff and Class Members known that Defendants would not do so, they would not have provided Defendant with their sensitive Private Information.

18. Plaintiff and Class Members have suffered injuries and damages. As a result of Defendants' wrongful actions and inactions, Plaintiff and Class Members' Private Information have been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened significant risk of identity theft and credit fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect herself from future loss. Plaintiff and Class Members have also lost the value of their Private Information, as well as the benefit of their bargains with Defendants.

19. As a result of Defendants' wrongful actions and inactions, patient information was stolen. Plaintiff and Class Members who have had their Private Information compromised have

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against Defendants.

**THE PARTIES**

20. Plaintiff is a citizen of California residing in Oakland, California and at all relevant times, a patient of Defendant who provided his sensitive Private Information to Defendants in exchange for services.

21. As a result of the Data Breach, Plaintiff has been placed at an increased risk of credit and identity fraud, and as a result has spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring his personal and financial accounts and seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

22. Plaintiff has suffered actual injury in the form of damage to and diminution in the value of his lost Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

23. Plaintiff suffered actual injury in the form of the lost benefit of his bargain with Defendants. Plaintiff entered into an agreement with and provided payment to Defendants under the reasonable but mistaken belief that said payment would to towards maintaining reasonable and adequate data security safeguards to protect the Private Information they entrusted to Defendants. Plaintiff would not have entered into such an agreement and would not have paid Defendants the amount that they paid had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff has thus suffered actual damages in an amount at least equal to the difference in value between the services which include reasonable and adequate data security that he bargained for and the services that he received which did not.

24. One Medical is a Delaware corporation with its principal place of business at One Embarcadero Center, Floor 19, San Francisco, California 94111. One Medical's registered agent

for service of process is CT Corporation System who can be served at 330 North Brand Boulevard, Glendale, California 91203.

25. The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues these Defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon alleges, that each Doe Defendant is legally responsible in some manner for the occurrences alleged here.

**JURISDICTION AND VENUE**

26. This Court has jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2) because this is a class action, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, the proposed Class Members exceed 100 in number, and minimal diversity exists because and members of the Class are citizens of a state different from Defendant, domiciled in Georgia, Massachusetts, North Carolina, Colorado, Texas, Arizona, and Washington, among others.

27. This Court has personal jurisdiction over One Medical because its principal place of business is located at One Embarcadero Center, Floor 19, San Francisco, California 94111, and because a substantial part of One Medical's conduct giving rise to this action took place in the state of California.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because One Medical is a resident in this District.

**FACTUAL ALLEGATIONS**

**A. The Data Breach and One Medical's Failure to Provide Reasonable, Adequate and Compliant Data Security as Promised**

29. One Medical's senior-focused healthcare business includes the operations formerly conducted under the name Iora Health. One Medical acquired Iora Health in 2021, and the acquired senior-care business now operates under the names One Medical Senior Health and One Medical Seniors.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

30. Following the acquisition, One Medical continued to retain historical patient information associated with legacy Iora Health and One Medical Seniors patients. At least some of that information was maintained as archived data on a third-party file-storage platform used by One Medical for its senior-care operations.

31. On June 13, 2026, One Medical learned that an unauthorized person had gained access to the third-party file-storage system. One Medical has not publicly identified the unauthorized person or explained how the unauthorized access was initially discovered.

32. One Medical launched an investigation and determined that the unauthorized person was able to access patient files stored on the platform between June 8 and June 11, 2026. Thus, according to One Medical's presently disclosed timeline, the unauthorized access continued over multiple days and was not discovered until after the period of access had ended.

33. On June 17, 2026, One Medical publicly disclosed the Data Breach in an announcement concerning One Medical Senior Health. One Medical described the incident as unauthorized access to a third-party system used to retain archived information originating from Iora Health, which One Medical acquired in 2021 and which now operates as One Medical Senior Health.

34. One Medical subsequently published a more detailed security-event notice stating that the unauthorized person was able to access patient files maintained on the affected platform. One Medical's notice therefore confirms that the incident involved access to actual patient records.

35. According to One Medical, its review identified files containing demographic and clinical records. The affected material therefore included information concerning identifiable patients and their healthcare.

36. One Medical stated that the files identified during its review were associated with designated One Medical Seniors and former Iora Health clinics in Atlanta, Cape Cod, Charlotte, Piedmont Triad, Denver, Houston, Phoenix, Tucson, and Seattle. The incident thus involved patient records associated with healthcare operations across multiple geographic markets.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

37. On June 18, 2026, shortly after One Medical publicly disclosed the incident, the cybercriminal extortion group known as ShinyHunters posted a separate claim concerning One Medical on a dark-web leak site. The group identified its target broadly as Amazon-owned One Medical or "OneMedical.com," rather than identifying the target solely as Iora Health or One Medical Seniors.




38. ShinyHunters claimed that more than 8.8 terabytes of One Medical data had been compromised or stolen. The group threatened to publish the allegedly obtained information unless One Medical entered negotiations by June 22, 2026.

39. The 8.8-terabyte figure is a claim made by ShinyHunters and has not been publicly verified.

40. On information and belief, the close temporal proximity and overlapping subject matter of One Medical's disclosure and ShinyHunters' posting support an inference that the two announcements may concern the same security incident, in whole or in part. The precise relationship between One Medical's confirmed archival-platform intrusion and ShinyHunters' broader exfiltration claim remains the subject of investigation.

41. The Data Breach occurred as a result of Defendants' failure to implement reasonable, adequate and complaint data security to protect its Private Information. Had

Defendants not failed to implement such data security, the Data Breach would likely not had occurred.

42. Defendants clearly recognized its duty to provide reasonable data security for Plaintiff's and Class Members' Private Information that it collects and stores as part of its business practices. Despite this, Defendant did not implement reasonable data security safeguards and protocols to protect Plaintiff's and Class Members Private Information and instead allowed it to be disclosed to unauthorized third-party hackers without authorization or consent.

**B. Defendants' Obligation to Protect Patient Private Information Under State and Federal Law**

43. Under the California Customer Records Act, California Civil Code § 1798.81.5(b), Defendants were required to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

44. Additionally, as a covered entity under HIPAA, Defendants hold a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' Private Information.

45. Under the HIPAA Privacy Rule, Defendants are required to:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives maintains or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by their workforce.

45 C.F.R. § 164. 306(a).

46. The HIPAA Privacy Rule also requires Defendants to "review and modify the security measures implemented…as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e) and to

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

"[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights" under 45 C.F.R. § 164.312(a)(1).

47. Further, the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits Defendants from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.* 799 F.3d 236, 243 (3rd Cir. 2015)

48. In addition, Defendants must comply with California Consumer Privacy Act (CCPA) & California Privacy Rights Act (CPRA), as well as similar privacy laws in other state jurisdictions.

49. Defendants failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

**C. Applicable Standards of Care**

50. In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer system and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

51. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their computer system to ensure that the Private Information in Defendants' possession was adequately secured and protected.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

52. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees and others who accessed the Private Information in their possession, including adequately training their employees and others who accessed Private Information in their computer systems on how to adequately protect Private Informations.

53. Defendants owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material fact in the decision to provide or entrust their Private Information to Defendants.

54. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants received Private Information from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their Private Information to be protected from disclosure. Defendants knew that the unauthorized disclosure of their Private Information would cause Plaintiff and Class Members to incur damages.

**D. The Value of the Stolen Private Information**

55. While the greater efficiency of electronic records translates to cost savings for entities such as Defendants, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

56. The high value of Private Information to criminals is further evidenced by the prices they will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

$40 to $200, and bank details have a price range of $50 to $200.[1] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[2] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[3]

57. Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[4] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[5] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[6]

58. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members. For example, it is believed that certain Private Information compromised in the 2017 Equifax data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

59. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or

---

[1] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[2] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[3] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Jan. 26, 2026).

[4] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133.

[5] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/.

[6] https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

identification number, alien registration number, government passport number, employer or taxpayer identification number."

60. Identity thieves can use Private Information, such as that of Plaintiff and Class Members which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

61. The ramifications of Defendant's failure to keep Plaintiff's and Class Members' Private Information secure are long lasting and severe. Once Private Information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Plaintiff's and Class Members' Private Information was taken by hackers to engage in identity theft or to sell it to other criminals who purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

62. There may be a time lag between when harm occurs versus when it is discovered and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office (GAO), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

63. The harm to Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive and most

---

[7] *Identity Theft and the Value of Your Personal Data*, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theftand-the-value-of-your-personal-data.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[8]

64. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[9]

65. When cybercriminals access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Plaintiff and Class Members.

66. A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[10] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[11]

67. And data breaches are preventable.[12] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of

---

[8] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf.

[9] *Id*.

[10] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[11] *Id*.; *see also* Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[12] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK.

appropriate security solutions."[13] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."[14]

68. Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[15]

69. Here, Defendants knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendants knew or should have known that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

70. Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**B. Plaintiff and Class Members Suffered Damages**

71. The unauthorized exposure of Plaintiff and Class Members' Private Information was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff

[13] *Id.* at 17.

[14] *Id.* at 28.

[15] *Id.*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

and Class Members' Private Information from unauthorized access, use, and disclosure, as required by and state and federal law.

72. Additionally, the Data Breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' Private Information in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal statute and regulation.

73. Plaintiff and Class Members' Private Information is private and sensitive in nature and was inadequately protected by Defendant. Defendant did not obtain Plaintiff and Class Members' consent to disclose their Private Information, as it promised to do and as required by applicable law and industry standards. As a result, Plaintiff and Class Members have been placed at an increased risk of credit and identity fraud, for which they must now spend increased time and effort to monitor their personal and financial accounts to prevent and mitigate the resulting misuse that will almost certainly occur.

74. As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have lost the value their Private Information. Private Information is a valuable commodity, as evidenced by numerous companies which purchase Private Information from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen PII across multiple different illicit websites.

75. Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified PayPal accounts with high balances are listed at as much as $2,000.

76. In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

77. Additionally, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class Members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their Private Information from unauthorized disclosure and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the health insurance services that include reasonable and adequate data security that they bargained for, and the health insurance that do not that they actually received.

78. Defendants' wrongful actions and inaction directly and proximately caused the unauthorized disclosure of Plaintiff and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. The improper disclosure of their Private Information;

b. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

c. Ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market; and

d. Ascertainable losses in the form of the lost benefit of Plaintiffs and Class Members bargains with Defendants.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Classes:

> **Nationwide Class:** All persons whose Private Information was maintained by One Medical and was compromised in the Data Breach.
>
> **California Subclass:** All California citizens whose Private Information was maintained by One Medical and was compromised in the Data Breach.

80. Excluded from the proposed classes are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

81. *Numerosity*: The members of the Classes are so numerous that the joinder of all members is impractical. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as reservation receipts and confirmations.

82. *Commonality and Predominance*: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Defendants disclosed Plaintiff and Class Members Private Information, without authorization;

ii. Whether such conduct constitutes a violation of California Civil Code section 56, *et seq.*;

iii. Whether Defendants timely notified the patients whose information was wrongly disclosed;

iv. Whether Defendants' notice was deficient;

v. Whether Defendants' conduct was negligent;

vi. Whether Defendants knew or should have known that their data security systems, policies, procedures, and practices were vulnerable;

vii. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of their Private Information;

viii. Whether Defendants violated California state consumer protection statutes or other state and federal laws and regulations;

ix. Whether Defendants were unjustly enriched by their conduct; and

x. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief.

83. *Typicality*: Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was misused and/or disclosed by Defendants.

84. *Adequacy of Representation*: Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class will be fairly and adequately represented by Plaintiff and his counsel.

85. *Superiority of Class Action*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action. Damages for any individual class member are likely insufficient to justify the cost of individual litigation

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

86. Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate to the Classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

(On Behalf of Plaintiff and All Class Members)

87. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

88. In 2016, the Federal Trade Commission (FTC) updated its publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and practices for business.[16] Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event of a breach.[17] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security;

[16] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[17] *Id.*



WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[18]

89. Defendants owed Plaintiff and the Class Members a duty of care in the handling of Private Information. This duty included, but was not limited to, keeping that Private Information secure and preventing disclosure of the Private Information to any unauthorized third parties. This duty of care existed independently of Defendants' contractual duties to Plaintiff and Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendant is obligated to incorporate adequate measures to safeguard and protect Private Information that is entrusted to them in their ordinary course of business and transactions with customers.

90. Pursuant to the Federal Trade Commission Act, 15 U. S. C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U. S. C. § 45. Orders from these actions further clarify the measures businesses are required to undertake in order to satisfy their data security obligations. [19]

91. Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's ("NIST's") *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018), https://nvlpubs. nist. gov/nistpubs/CSWP/ NIST. CSWP. 04162018. pdf. Among other guideposts, the NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2).

[18] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[19] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Those steps are:

> *Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.
>
> *Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.
>
> *Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.
>
> *Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.
>
> *Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.
>
> *Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

> resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.
>
> _Step 7: Implement Action Plan_. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

92. In addition to their obligations under federal regulations and industry standards, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and the Class Members.

93. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their internal data systems to ensure that the Private Information in Defendants' possession was adequately secured and protected.

94. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the P Private Information in its custodianship, including ensuring that their Private Information was not being disclosed without authorization to third party hackers.

95. Defendants owed a duty to Plaintiff and the Class Members to implement processes or safeguards that would detect an authorized disclosure of customer Private Information such as the Data Breach.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

96. Defendants owed a duty to Plaintiff and the Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material consideration in Plaintiff and Class Members' decisions to entrust their Private Information to Defendants.

97. Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occur.

98. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendant collected Private Information from Plaintiff and the Class Members. Defendant knew that the unauthorized disclosure of Plaintiff's and the Class Members' Private Information would cause them to incur damages.

99. Defendants breached their duties of care to safeguard and protect the Private Information which Plaintiff and the Class Members entrusted to it. Defendants adopted inadequate safeguards to protect their Private Information from unauthorized disclosure and failed to adopt industry-wide standards set forth above in its supposed protection of the Private Information. Defendants failed to design, maintain, and test its computer system to ensure that the Private Information was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect unauthorized disclosure, and otherwise breached each of the above duties of care by carelessly allowing unauthorized third parties to view, collect and exfiltrate Private Information, which led directly to the breach.

100. Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendants failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Members' Private Information from unauthorized disclosure. In violation of the FTC guidelines, *inter alia*, Defendants did not protect the personal customer information that it was entrusted; lacked the

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

requisite understanding of its own computer systems' vulnerabilities—including what Private Information that system disclosed to unauthorized third parties; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendants, *inter alia*, failed to adopt sufficient resources to identity and address such security gaps.

101. Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

102. As a direct and proximate result of Defendants' failure to adequately protect and safeguard the Private Information, Plaintiff and the Class Members suffered damages. Plaintiff and Class Members were damaged because their PII was accessed by unauthorized third party hackers without any prior authorization. Plaintiffs and Class Members have subsequently lost the value of their Private Information, as well as the benefit of their bargains with Defendants.

103. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### Breach of Implied Contract

(On Behalf of Plaintiff and All Class Members)

104. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

105. Plaintiff and Class Members entered into agreements for services with Defendants. In making those agreements, Defendant solicited and invited Plaintiff and Class Members to provide their Private Information to Defendants as requirement of receiving those health insurance services. Plaintiff and Class and Members accepted Defendants' offers and provided their Private Information to enter the agreements. Inherent within those agreements was an implied contractual obligation that Defendants would implement reasonable and adequate data security to safeguard and protect the Private Information entrusted to them by Plaintiff and Class Members from unauthorized disclosure.

106. Thus, when Plaintiff and Class Members provided their Private Information to Defendants in exchange for Defendants' services, they entered into implied contracts with Defendants under which Defendants agreed to and was obligated to reasonably protect their Private Information from unauthorized disclosure. Plaintiff and Class provided payment to Defendants, as well as their Private Information, under the reasonable but mistaken belief that any money they paid to Defendants in connection to its provision of its services would be used in part to provide reasonable and adequate data security for their Private Information.

107. This implied contract is acknowledged and memorialized in Defendants' customer-facing documents.

108. Despite these promises, Defendants did not provide reasonable and adequate data security for Plaintiff and Class Members' Private Information, and instead caused it to be disclosed to unauthorized third-party hackers. This was in direct contradiction to the promises Defendants made.

109. Defendants did not comply with state and federal statutes and regulations and did not comply with industry data security standards. In doing so, Defendants materially breached their obligations under implied contract.

110. That Defendants would implement such reasonable and adequate data security was a material prerequisite to the agreements between Plaintiff and Class Members. Reasonable consumers value the privacy of their Private Information, and do not enter into agreements for medical services with healthcare providers which are known not to protect customer data. Accordingly, Plaintiff and Class Members would not have entered into agreements with Defendants and would not have provided them with their sensitive Private Information, had they known that Defendants would not implement such reasonable and adequate data security.

111. As a result of Defendants' breach, Plaintiff and Class Members have lost the value of their Private Information, as well as the benefit of their bargains. Plaintiff and Class Members entered into agreements with Defendants under the reasonable but mistaken belief that it would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

112. Plaintiff and Class Members fully performed their obligations under the implied contract by providing their Private Information and making payments to Defendants.

113. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**THIRD CAUSE OF ACTION**

**Unjust Enrichment/Quasi-Contract**

(On Behalf of Plaintiff and All Class Members)

114. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

115. Plaintiff and Class Members provided their Private Information and conferred a monetary benefit upon Defendants in exchange for health insurance services. Plaintiff and Class Members did so under the reasonable but mistaken belief that part of their monetary payment to Defendants would cover the implementation of reasonable, adequate, and statutorily mandated safeguards to protect their Private Information from unauthorized disclosure. Defendants was enriched when it sold its services at a higher price than it otherwise would have based on those reasonable but mistaken beliefs.

116. Defendants' enrichment came at the expense of Plaintiff and Class Members, who would not have paid for Defendants' services, or would have only been willing to paid substantially less for them, had they been aware that Defendants had not implement reasonable, adequate and statutorily mandated safeguards to protect their Private Information.

117. As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff and Class Members suffered have suffered damages in the form of their lost benefit of the bargains. Plaintiff and Class Members entered into agreements with Defendants under the

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

reasonable but mistaken belief that it would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendants would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

118. Defendants should not be permitted to retain Plaintiff's and Class Members' lost benefits, without having adequately implemented the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards. Defendants should not be allowed to benefit at the expense of consumers who trust Defendants to protect the Private Information that they are required to provide to Defendants in order to receive Defendants' services.

119. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## FOURTH CAUSE OF ACTION

**Violation of the California Customer Records Act, Cal. Civ. Code § 1798. 80, *et seq.***

(On Behalf of Plaintiff and All California Subclass Members)

120. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

121. California Civil Code § 1798.81.5(b) requires that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

122. Plaintiff and the Class Members are "customer[s]" within the meaning of California Civil Code § 1798.80(c) and are California residents.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

123. Defendants are a "business" within the meaning of California Civil Code § 1798.80(a).

124. Plaintiff and the Class Members' Private Information constitutes "personal information" within the meaning of California Civil Code § 1798.80(e).

125. Defendants violated California Civil Code § 1798.81.5(b) by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff and the Class Members' Private Information from unauthorized access, destruction, use, modification, or disclosure. Specifically, Defendants' inadequate data security safeguards allowed third-party hackers to breach its systems and view, collect and acquire Plaintiff and Class Members' Private Information without *any* authorization.

126. As a direct and proximate result of Defendants' violation of California Civil Code § 1798.81.5(b), Plaintiff and the Class Members' Private Information was compromised and exposed in connection with the Data Breach.

127. As a result of the Data Breach and the exposure of their Private Information to unauthorized third parties, Plaintiff and the Class Members have lost the value of their Private Information, as well as the benefit of their bargains, and are thus entitled to recover compensatory damages in an amount according to proof at trial pursuant to California Civil Code § 1798.84(b).

## <u>FIFTH CAUSE OF ACTION</u>

**Violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798. 150 *et seq*.**

(On Behalf of Plaintiff and All California Subclass Members)

128. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

129. Under California Civil Code section 1798.150, subdivision (a)(1):

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the

> nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

Cal. Civ. Code § 1798.150(a)(1)

130. Plaintiff and the Class Members provided to Defendants their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their Private Information. Plaintiff and Class Members' Private Information was then subjected to unauthorized access and exfiltration by third-party hacker as a direct and proximate result of Defendants' inadequate data security safeguards.

131. The unauthorized viewing, collection and disclosure of Plaintiff and the Class Members' Private Information was a result of Defendants' violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect their personal information.

132. Under Defendants' duty to protect customers' Private Information, it was required to implement reasonable security measures to prevent and deter unauthorized third parties from accessing the Private Information of customers. Defendants did not do so and instead left vulnerabilities within its data security environment. That these vulnerabilities existed and enabled unauthorized third parties to access and harvest customers Private Information evidence that Defendants has breached that duty.

133. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

134. Under the CCPA's "notice and cure" provision, Plaintiff is required to provide Defendants with written notice at least 30 days prior to the commencement of an action identifying the specific provisions Plaintiff alleges have been or are being violated. In satisfaction

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

of this requirement, Plaintiff will send written notice to Defendants via certified or registered mail. Plaintiff will seek to amend the Complaint to seek relief once the requisite 30-day notice period has expired and to state that Plaintiff gave Defendant proper notice.

**SIXTH CAUSE OF ACTION**

**Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*.**

(On Behalf of Plaintiff and All California Subclass Members)

135. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

136. Defendants, as "business[es] organized for the purpose of maintaining medical information in order to make the information available to an individual or provider of health care…" is a "provider of health care" under California Civil Code § 56.06 and is thus subject to the Confidentiality of Medical Information Act (CMIA).

137. Plaintiff and Class Members are "members" under California Civil Code § 56.06(j).

138. Defendants, as a direct result of their unlawful actions and inactions, disclosed "medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by unauthorized third-party hackers to access, view and subsequently exfiltrate Plaintiff and Class Members' Private Information in violation of California Civil Code § 56.10(a).

139. In doing so, Defendants breached the confidentiality of Plaintiff and Class Members' protected information in violation of California Civil Code § 56.101(a) by allowing unauthorized third-party hackers to view, collect and acquire Plaintiff and Class Members' Private Information.

140. That unauthorized third party hackers viewed Plaintiff and Class Members' sensitive Private Information is demonstrable. Indeed, the primary reason why cybercriminals would steal patient information from entities such as Defendants is to misuse it—either by misusing it themselves, using that information to extort the victim, or selling it for profit on the

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

dark web. Viewing the information to confirm the nature and quality of the information they have stolen is crucial to effectuating all of those misuses.

141. Plaintiff and Class Members have suffered actual injury and are entitled to damages under California Civil Code §§ 56.35 and 56.36 in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## <u>SEVENTH CAUSE OF ACTION</u>

**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.**

(On Behalf of Plaintiff and All California Subclass Members)

142. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

143. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*

144. Plaintiff and Class members are "consumers," as the term is defined by California Civil Code § 1761(d).

145. Plaintiff, Class Members, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

146. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants was likely to deceive consumers.

147. California Civil Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

148. Defendants violated this provision by representing that they took appropriate measures to protect Plaintiff's and Class Members' Private Information when it did not. Specifically, Defendants promised to Plaintiff and Class Members that they had implemented legally complaint data security safeguards to protect their Private Information and that it would not disclose their Private Information to non-authorized parties without their express written permission.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

149. In reliance on these material promises by Defendants, Plaintiff and Class Members were induced to enter into a relationship with Defendants and provided their Private Information.

150. Defendants did not adhere to its data security promises. Instead, they allowed unauthorized third-party hackers to view, collect and acquire Plaintiff and Class Members' Private Information, which it then used for marketing purposes.

151. As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770.

152. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

153. Plaintiff and Class Members suffered injuries caused by Defendants' misrepresentations, because they provided their Private Information believing that Defendants would adequately protect this information.

154. Plaintiff and Class Members may be irreparably harmed and /or denied an effective and complete remedy if such an order is not granted.

155. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and Class Members.

156. Furthermore, in addition to all legal remedies sought herein, Plaintiff, on behalf of the Class, seek monetary relief, including, but not limited to, all damages recoverable under the CLRA, including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendants may have acquired by means of Defendants' unlawful and/or unfair business practices, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and unfair business practices; declaratory relief, and attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5.

157. Under the California Civil Code § 1782, Plaintiff is required to provide Defendants with written notice at least 30 days prior to the commencement of an action identifying the specific provisions Plaintiff alleges have been or are being violated. In satisfaction of this requirement, Plaintiff will send written notice to Defendants via certified or registered mail.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Plaintiff will seek to amend the Complaint to seek relief once the requisite 30-day notice period has expired and to state that Plaintiff gave Defendants proper notice.

**EIGHTH CAUSE OF ACTION**

**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.**

(On Behalf of Plaintiff and All California Subclass Members)

158. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

159. The California Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq*., prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

160. By reason of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class members' Private Information, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

161. Defendants' business practices, as alleged herein, were unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential Private Information of consumers has been compromised for all to see, use, or otherwise exploit.

162. Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class members' Private Information also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code § 17200 *et seq.*, in that Defendants' conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

163. Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

and collecting Plaintiff's and Class Members' Private Information with knowledge that the information would not be adequately protected.; by violating the statutes described above; and by storing Plaintiff's and Class Members' Private Information in an unsecure electronic environment in violation of statute and regulation, which requires Defendant to take reasonable methods of safeguarding the Private Information of Plaintiff and the Class Members.

164. Defendants' practices were also unlawful and in violation of California Civil Code § 1798, *et seq*. and Defendants' own privacy policy because Defendants failed to take reasonable measures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure—and instead allowed unauthorized third party hackers to view, collect and acquire it for its own commercial purposes.

165. Defendants' business practices, as alleged herein, were fraudulent because they were likely to deceive consumers into believing that the Private Information they entrusted to Defendants would remain private and secure when, in fact, it was not private and secure.

166. Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their Private Information.

167. But for Defendants' misrepresentations and omissions, Plaintiff and Class members would not have provided their Private Information to Defendants or would have only done so at a lower cost than what the paid for Defendants' services.

168. As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' Private Information, they have been injured by, *inter alia*: (1) the diminution in the value and/or use of their Private Information entrusted to Defendants; and (2) the loss of Plaintiff's and Class Members' benefits of their bargains, as they would not have paid for Defendants' services, or would only have been willing to pay substantially less for them, had they known that it would not adequately protect their Private Information.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

169. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief, reasonable attorney's fees under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate relief.

**NINTH CAUSE OF ACTION**

**Invasion of Privacy**

(On Behalf of Plaintiff and All California Subclass Members)

170. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

171. Plaintiff and Class Members have a legally protected privacy interest in their Private Information that Defendants required them to provide and allow them to store.

172. California established the right to privacy in Article 1, Section 1 of the California Constitution.

173. The State of California recognizes the tort of Intrusion into Private Affairs, and adopts the formulation of that tort found in the Restatement (Second) of Torts which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977)

174. Plaintiff and Class Members reasonably expected that their Private Information would be protected and secured from unauthorized parties, would not be disclosed to any unauthorized parties, or disclosed for any non-authorized purpose.

175. Defendants owed a duty its patients, including Plaintiff and Class Members, to keep their Private Information confidential.

176. The unauthorized release of Private Information, especially the type related to sensitive personal and/or health information, is highly offensive to a reasonable person.

177. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendants as part of

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

their use of Defendants' services, but privately, with the intention that Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

178. The Data Breach constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

179. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew its information security practices were inadequate and would likely result in a data breach such as the one that harmed Plaintiff and Class Members.

180. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and Class Members.

181. Defendants unlawfully invaded the privacy rights of Plaintiff and Class Members by (a) failing to adequately secure their Private Information from disclosure to unauthorized parties for improper purposes; (b) disclosing their Private Information to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their Private Information to unauthorized parties without the informed and clear consent of Plaintiff and Class Members. This invasion into the privacy interest of Plaintiff and Class Members is serious and substantial.

182. In failing to adequately secure Plaintiff's and Class Members' Private Information, Defendant acted in reckless disregard of their privacy rights. Defendants knew or should have known that their substandard data security measures are highly offensive to a reasonable person in the same position as Plaintiff and Class members.

183. Defendants violated Plaintiff's and Class Members' right to privacy under the common law as well as under state law, including the California Constitution, Article I, Section I. As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's and Class Members' Private Information has been viewed or is at imminent risk of being viewed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Class Members have suffered injury as a result of Defendants' unlawful invasions of privacy and are entitled to appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all the Class Members, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

1. For an Order certifying the Classes as defined herein and appointing Plaintiff and his Counsel to represent the Class;

2. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of Private Information compromised.

4. For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

5. For an award of punitive and treble damages, in an amount to be determined at trial;

6. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

7. For such other and further relief as this Court may deem just and proper.

Dated: June 19, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Jesenia A. Martinez*
Thiago M. Coelho
Chumahan B. Bowen
Jesenia A. Martinez

*Attorneys for Plaintiff and all others similarly situated*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: June 19, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Jesenia A. Martinez*
Thiago M. Coelho
Chumahan B. Bowen
Jesenia A. Martinez

*Attorneys for Plaintiff and all others similarly situated*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017